IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERESA P. MARTINEZ, and DAISY FLORES,<br><br>Defendants. | 8:22-CR-25<br><br>MEMORANDUM AND ORDER ON MOTION TO SUPPRESS |

## I. INTRODUCTION

This matter is before the Court on Magistrate Judge Susan M. Bazis's Findings and Recommendation, Filing 97, recommending that the undersigned deny defendant Teresa P. Martinez's Motion to Suppress, Filing 53, and defendant Daisy Flores's Motion to Suppress, Filing 61. Both Martinez and Flores have filed objections to Judge Bazis's Findings and Recommendation. Filing 98; Filing 101. For the reasons stated herein, the Court overrules the objections, adopts Judge Bazis's Findings and Recommendation in its entirety, and denies the Motions to Suppress.

## II. BACKGROUND

On February 6, 2022, Deputy Jacob Wirthele of the Otoe County Sheriff's Office was patrolling on Highway 2 in Otoe County, Nebraska. Filing 96 at 4–5, 9. At around 11:30 a.m., Deputy Wirthele saw a Ford Expedition with California plates speeding in a construction zone on the Missouri Bridge between Nebraska and Iowa. Filing 96 at 10–11. Deputy Wirthele activated the lights on his patrol car, causing the vehicle to pull over after crossing the bridge into Iowa. Filing 96 at 12–13, 67. After the vehicle stopped, Deputy Wirthele exited his patrol car and walked to the Ford's front passenger window. Filing 96 at 13, 16; Ex. 2 at 1:50–2:05. Defendant Martinez

1

was in the driver's seat and defendant Flores, who is Martinez's daughter, was in the passenger seat. Filing 96 at 16.

Deputy Wirthele explained to Defendants the reason for the stop and asked for their licenses, vehicle registration, and proof of insurance. Filing 96 at 16–17. Defendants provided him with the vehicle's registration—which listed Daisy Flores and Martinez Patino as the owners—and Flores's California driver's license. Filing 96 at 19; Ex. 2 at 2:26–3:05; Ex. 14. Martinez admitted that she did not have a driver's license, however. Filing 96 at 20–21.

While interacting with Defendants, Deputy Wirthele thought they were acting nervous and made several observations that made him suspicious. First, Deputy Wirthele noted that Defendants immediately began making excuses for speeding before he had explained the reason for the stop, which he testified was different from how other people usually react to being stopped. Filing 96 at 22–23; Ex. 2 at 2:05–2:22. Second, Deputy Wirthele noticed that the vehicle had minimal luggage and that Martinez and Flores each had two cell phones. Filing 96 at 20. Deputy Wirthele explained at the suppression hearing that, based on his training and experience, drug traffickers often travel lightly and have more than one cell phone. Filing 96 at 20–22. Third, when Deputy Wirthele commented on the eagles near where the Ford stopped, Flores spontaneously began telling him that her and Martinez were headed to an art museum in Kansas and that it was her birthday weekend. Filing 96 at 23; Ex. 2 at 2:33–2:41. Deputy Wirthele testified that Flores's statements sounded rehearsed because they were unrelated to his remark about the eagles. Filing 96 at 23. He also noticed later during the stop that Flores's driver's license listed her birthday as a month away, despite Flores stating her and Martinez were presently traveling for her birthday. Filing 96 at 23–24; Ex. 12.

Deputy Wirthele informed Defendants that he would issue a warning ticket and asked Martinez to come back to his patrol car because she did not have a driver's license. Filing 96 at 24–25; Ex. 2 at 3:23–3:31. Martinez walked back to the patrol car with Deputy Wirthele and sat in the passenger seat. Filing 96 at 25. Deputy Wirthele asked Martinez where her and Flores were driving, and Martinez replied that they were traveling to Kansas. Filing 96 at 26; Ex. 2 at 5:08–5:25; Ex. 3 at 5:50–6:00. When Deputy Wirthele asked where in Kansas, Martinez started explaining that Flores was her daughter and that it was Flores's birthday, but did not give an answer to Deputy Wirthele's question. Filing 96 at 26; Ex. 3 at 6:00–6:09. Deputy Wirthele then collected Martinez's information and began speaking to dispatch. Ex. 3 at 6:15–8:30. Deputy Wirthele inquired again where in Kansas Defendants were traveling, and Martinez reiterated that it was Flores's birthday. Ex. 3 at 8:52–59. Deputy Wirthele noted that Martinez was not responding directly to his questions. Filing 96 at 26. Deputy Wirthele then asked which city in Kansas and provided several potential city names. Filing 96 at 31; Ex. 3 at 8:59–9:05. Martinez stated that she did not know, and that Flores had the directions. Ex. 3 at 9:05–9:15. Deputy Wirthele found this response odd because, in his experience, a vehicle's occupants know to which city they are traveling. Filing 96 at 28, 88.

After Deputy Wirthele asked Martinez when Defendants had left Fresno, California, Martinez first stated February 1, 2022, but later corrected herself and said February 3. Ex. 3 at 11:19–11:56. Martinez told Deputy Wirthele that they planned to be in Kansas three days. Filing 96 at 28–29; Ex. 3 at 10:54–11:02. When asked about Defendants' plans in Kansas besides visiting a museum, Martinez could not provide any specifics. Ex. 3 at 11:10–11:18. These responses also raised Deputy Wirthele's suspicions. Filing 96 at 28.

3

In response to Deputy Wirthele's questions about Defendants' route, Martinez indicated that Defendants had driven through Lincoln, Nebraska. Filing 96 at 29; Ex. 3 at 18:19–18:30. Deputy Wirthele testified that this answer did not make sense because it suggested that Defendants were using a substantially slower route. Filing 96 at 29–30. Deputy Wirthele used Google Maps to map a route from Fresno to eastern Kansas and determined that Defendants were off route and should have been on I-70. Filing 96 at 29. When Deputy Wirthele confronted Martinez with this information, Martinez explained that they were on the route given by their GPS, and later said she was trying to avoid storms. Filing 96 at 30; Ex. 3 at 20:40–21:34. During his conversation with Martinez, Deputy Wirthele noticed that she was leaning away from him, had positioned herself towards the corner of his vehicle, and that she was breathing rapidly, which he found to be indicative of nervousness. Filing 96 at 31.

While Deputy Wirthele spoke to Martinez, he was in contact with dispatch trying to get information about Martinez and Flores. Filing 96 at 26. Dispatch was unable to locate a license or a female from California with Martinez's name and relayed that Flores's license was suspended and revoked. Filing 96 at 26–27. Deputy Wirthele testified that a lack of a license and a revoked license is a factor he considers when determining whether an individual is involved in criminal activity. Filing 96 at 90.

Deputy Wirthele returned to Defendants' vehicle to speak with Flores while Martinez remained behind in the cruiser. Filing 96 at 32. Deputy Wirthele asked Flores where her and Martinez were traveling, and Flores said Kansas. Filing 96 at 32. When Deputy Wirthele asked where in Kansas, Flores could not provide the name of a city, but later indicated that her and Martinez were driving to Kansas City when Deputy Wirthele provided that name. Filing 96 at 34; Ex. 2 at 21:20–23:54. Flores told Deputy Wirthele that her and Martinez would be in Kansas for a

4

couple days or a week, which was slightly different from the timeframe given by Martinez. Filing 96 at 32, 34. Flores also explained that they were not on I-70 because they had missed an exit, although she could not remember where they missed the exit. Filing 96 at 34; Ex. 2 at 22:40–23:03. Deputy Wirthele testified that for Defendants to have missed an exit for I-70, they would have to have been somewhere in Colorado. Filing 96 at 34. Deputy Wirthele's conversation with Flores and the conflicting answers provided by Martinez and Flores further raised his suspicions. Filing 96 at 90–91.

Deputy Wirthele returned to his cruiser to speak with Martinez while Flores remained in the Ford Expedition. Filing 96 at 37. Deputy Wirthele began printing a warning ticket for Martinez and told Martinez that Flores's license was suspended and revoked. Filing 96 at 37–38. After advising Martinez that her and Flores should pull over at a gas station because neither of them had a valid license, Deputy Wirthele told Martinez, "So, I'm done with the traffic stop. I do have some other questions for you if you're willing to answer them for me." Filing 96 at 39; Ex. 2 at 27:45–28:51. Martinez said, "Okay." Filing 96 at 39; Ex. 2 at 28:51–28:53. Deputy Wirthele then asked if there was anything illegal in the car, and Martinez said no. Ex. 2 at 28:54–29:23. Deputy Wirthele asked for Martinez's consent to search the vehicle, and Martinez indicated that the Ford Expedition was Flores's car. Filing 96 at 39; Ex. 2 at 29:24–29:37. Deputy Wirthele asked Martinez to remain in the cruiser while he asked Flores for consent to search the vehicle. Filing 96 at 40; Ex. 2 at 29:36–30:16.

Deputy Wirthele walked back to the Ford Expedition and, after inquiring about anything illegal in the car, asked Flores if he could search the vehicle. Filing 96 at 41; Ex. 2 at 30:50–31:05, Flores said no. Filing 96 at 41; Ex. 2 at 31:05–31:17. Deputy Wirthele told Flores that she had every right to say no and informed her that he was going to call for a K-9 unit. Filing 96 at 41; Ex.

5

2 at 31:25–32:15. Deputy Wirthele returned to his cruiser and again asked Martinez if he could search the vehicle because she seemed to be listed on the registration. Filing 96 at 84; Ex. 2 at 32:42–33:10. In response, Martinez reiterated that Flores was the owner of the vehicle. Ex. 2 at 33:10–33:15. Deputy Wirthele informed Martinez that he was going to call for a dog to sniff the vehicle, and if the dog did not alert for narcotics, her and Flores would be "good to go." Ex. 2 at 33:16–33:35. As soon as Deputy Wirthele began checking for a K-9 unit in the area, Martinez said, "Don't do that." Filing 96 at 43; Ex. 2 at 34:35–34:41. Deputy Wirthele asked, "Why is that? Is there something in the car that I should be aware of?" Ex. 2 at 34:41–34:45. Martinez answered, "Yes, but none of it is mine." Ex. 2 at 34:50–34:55. Martinez then explained that somebody paid her and Flores and that she knows people who traffic drugs. Ex. 2 at 34:59–35:13. Deputy Wirthele interrupted Martinez and told her he was going to read her the *Miranda* rights, to which Martinez replied, "Yeah, I know, I know those." Ex. 2 at 35:17–35:34. After being *Mirandized*, Martinez explained that there were three or four pounds of marijuana in the vehicle. Ex. 2 at 36:11–36:19. Deputy Wirthele called for backup to help search the vehicle. Filing 96 at 43–45; Ex. 2 at 36:55–37:17. While waiting for the other officer to arrive, Martinez told Deputy Wirthele that there were also ten bundles of methamphetamine. Ex. 2 at 41:37–41:47.

      Once the other officer arrived, Deputy Wirthele searched Defendants' vehicle and discovered four pounds of marijuana and ten pounds of methamphetamine. Filing 96 at 47–48. At that point, Deputy Wirthele handcuffed the defendants and transported them to the Otoe County Jail. Filing 96 at 52.

### III. ANALYSIS

#### A. Standard of Review

28 U.S.C. § 636(b)(1) governs the different standards of review when a party objects to a pretrial decision or a proposed findings of fact and recommendations by a magistrate judge. *See* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." *Id.*; *accord United States v. Azure*, 539 F.3d 904, 909 (8th Cir. 2008) ("[U]pon an objection to a magistrate judge's proposed findings and recommendations . . . a district court must undertake de novo review."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . ."). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo

determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See Azure, 539 F.3d at 910–11*. Here, the Court has reviewed the transcript of the suppression hearing and the admitted evidence, including Deputy Wirthele's bodycam footage and the video recording from his cruiser.

### B. Objections

In her Findings and Recommendation, Judge Bazis found that Deputy Wirthele had sufficient reasonable suspicion to extend the traffic stop to wait for a drug dog; that Deputy Wirthele did not try to bypass Flores's denial of consent to search the vehicle by asking Martinez for consent to search a second time; that Martinez consented to Deputy Wirthele asking additional questions after the end of the stop; and that Deputy Wirthele did not violate Martinez's rights under *Miranda v. Arizona*. Filing 97. Defendants object to Judge Bazis finding that the encounter between Deputy Wirthele and Martinez was consensual when he told her to stay in his vehicle after stating that he was finished with the traffic stop. Filing 98 at 1; Filing 99 at 2, 4. Defendants also object to Judge Bazis finding that Deputy Wirthele had reasonable suspicion to extend the traffic stop after Deputy Wirthele issued a warning ticket. Filing 99 at 6; Filing 102 at 3–4. The Court addresses both objections and overrules them.

*1. Reasonable Suspicion*

The Court begins with Defendants' argument that Deputy Wirthele lacked reasonable suspicion to continue the traffic stop after he issued Martinez a warning ticket. Defendants' assert that their statements regarding their route and destination were not suspicious but consistent with contemporary life in which people rely on their cell phones to help them navigate while driving. Filing 99 at 6; Filing 102 at 4. They further argue that there was nothing unusual about Defendants

8

saying that they were celebrating Flores's birthday and Martinez not knowing the details of their destination. Filing 99 at 7; Filing 102 at 4. Defendants also challenge Deputy Wirthele's testimony that they were acting nervous and that the minimal luggage in their vehicle was suspicious. Filing 99 at 6–7; Filing 102 at 3. The Government responds that Defendants' arguments about contemporary life are inconsistent with caselaw and that Defendants cannot defeat reasonable suspicion by making an innocent justification for each articulable fact. Filing 100 at 4–6.

"A traffic stop is a seizure within meaning of the Fourth Amendment, and authority for the stop 'ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.'" *United States v. Salkil*, 10 F.4th 897, 898 (8th Cir. 2021) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). These tasks include "asking for license and registration or inquiring about the occupants' destination, route, and purpose."[1] *United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014). Any delay that prolongs a stop beyond an officer's routine tasks associated with handling the traffic violation is impermissible "unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention or unless the continued encounter is consensual." *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007)). A vehicle's occupants, regardless of who owns the vehicle, may suppress evidence discovered during a search of the vehicle "when an unreasonably extended traffic stop causes the search." *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019).

If an officer develops "reasonable suspicion" that an individual is involved in other criminal activity during a stop, "the officer may expand the scope of the encounter to address that

---

[1] The Eighth Circuit also appears to include requests to search a vehicle as encompassed within the routine questions officers may ask during a traffic stop. *See United States v. Shafer*, 608 F.3d 1056, 1062 (8th Cir. 2010) ("[T]he officer may ask routine questions such as . . . whether the officer may search the vehicle.").

suspicion." *Chartier*, 772 F.3d at 543–44 (quoting *United States v. Peralez*, 526 F.3d 1115, 1120 (8th Cir. 2008)). "Reasonable suspicion is 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Brown*, 60 F.4th 1179, 1182 (8th Cir. 2023) (quoting *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020)). "The standard depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Glover*, 140 S. Ct. at 1188). Mere hunches and conduct that describes "a very large category of presumably innocent travelers" do not satisfy this standard. *United States v. Callison*, 2 F.4th 1128, 1132 (8th Cir. 2021) (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)). "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Clinton v. Garrett*, 49 F.4th 1132, 1140 (8th Cir. 2022) (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). In evaluating the existence of reasonable suspicion, a court will look at "the totality of the circumstances" and permit officers to draw inferences and deductions based on their "own experience and specialized training." *United States v. Noriega*, 35 F.4th 643, 650 (8th Cir. 2022).

      The Court agrees with Judge Bazis that Deputy Wirthele had sufficient reasonable suspicion to extend the stop after issuing the warning ticket to ask about illegal items in the vehicle, request consent to search, and begin looking for a K-9 unit. From the moment Deputy Wirthele began interacting with them, Defendants exhibited suspicious behavior. Both immediately began making excuses for speeding before Deputy Wirthele could explain the reason for the stop, which he testified was different from how most people he has stopped react. Each defendant had two cell phones and had brought light luggage despite their long journey, which Deputy Wirthele testified is common among individuals transporting drugs. When Deputy Wirthele made a comment about

10

eagles nearby the site of the stop, Flores, unprompted, began explaining the reason for their travel and their destination. Deputy Wirthele credibly testified that Flores's story sounded rehearsed.

When Deputy Wirthele had Martinez join him in his cruiser[2] because she had no license or other identification, his suspicion reasonably grew while conversing with her.[3] *See United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th Cir. 2017) ("An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered."). Deputy Wirthele first asked Martinez about her and Flores's destination, to which she vaguely answered, "Kansas." After Deputy Wirthele tried to obtain clarification twice as to where in Kansas they were traveling, Martinez seemed to avoid the question by saying that it was Flores's birthday. Ex. 3 at 6:00–6:09, 8:52–59. Deputy Wirthele noticed that as he spoke to Martinez, she was leaning away from him towards the corner of his cruiser and breathing rapidly, which appeared to be unusually nervous behavior considering the fact he had already told her he would only issue a warning. *Cf. United States v. Pacheco*, 996 F.3d 508, 512 (8th Cir. 2021) (noting that the defendant "was so nervous that [the officer] could see his stomach visibly 'fluttering'"). Finally, after Deputy Wirthele listed several cities in Kansas, Martinez said that she did not know where her and Flores were going in Kansas and that Flores had the directions. Martinez also could not give any specifics about her and Flores's plans in Kansas other than a visit to a museum. Martinez's nervous behavior and her inability to provide

---

[2] Eighth Circuit caselaw permits questioning in a police cruiser during a traffic stop. *See United States v. Englehart*, 811 F.3d 1034, 1040 (8th Cir. 2016) ("[A]n officer also may request that the driver sit in the patrol car to answer questions and may ask questions about his itinerary." (quoting *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013))).

[3] Although Defendants make no argument that Deputy Wirthele unlawfully extended the stop during his initial conversation with Martinez in his cruiser, the Court notes that this conduct was permissible because Martinez had no license or other form of identification, and Deputy Wirthele was speaking with dispatch about identifying her and Flores. *See United States v. Anguiano*, 795 F.3d 873, 876 (8th Cir. 2015) ("[C]omplications in carrying out the traffic-related purposes of the stop may justify a longer detention than when a stop is strictly routine." (quoting *United States v. Olivera–Mendez*, 484 F.3d 505, 510 (8th Cir. 2007))).

any basic details about her destination and plans, even though she was the driver, Flores's mother,[4] and had journeyed a significant distance from California, satisfies the reasonable suspicion standard to extend the stop and expand Deputy Wirthele's investigation. *See United States v. Gastelum*, 11 F.4th 898, 903 (8th Cir. 2021) ("[O]dd answers and strange travel plans can support a finding of reasonable suspicion"); *Pacheco*, 996 F.3d at 512 (stating that "vague and confusing answers to routine questions about travel plans" are articulable facts supporting reasonable suspicion).

But there is still more. Deputy Wirthele returned to Flores and asked her some of the same questions he had asked Martinez. Flores, like her mother, could not give an answer about their specific destination and plans beyond a vague reference to some unnamed "museum" in Kansas. Flores's other responses contradicted Martinez's answers. Martinez had stated they planned to be in Kansas three days. Flores said the plan was to be in Kansas for up to a week. When confronted about the unusual route they were taking to get to Kansas, Martinez had said she was following the route given by the GPS and was trying to avoid storms. Flores gave missing an exit as an excuse, even though for that to be possible the missed exit would have to have been somewhere in Colorado. Flores's inability to explain Defendants' travel plans and her answers contradicting Martinez's provided further justification to extend the stop. *See United States v. Bracamontes*, 614 F.3d 813, 816 (8th Cir. 2010) (holding that the defendant's statements that "contradicted his [passenger's] account of their journey" was an articulable fact supporting reasonable suspicion).

The Court could go on. Defendants' route did not make sense given their stated destination. Defendants said they were celebrating Flores's birthday, but Deputy Wirthele saw that Flores's license listed her birthday as a month away. Martinez said her and Flores left California on

---

[4] Based on her license, Flores was 20 at the time of the stop. *See* Ex. 12.

12

February 1st, but later indicated they had left February 3rd. All this is to say that the facts confronting Deputy Wirthele were more than enough to meet the reasonable suspicion standard. Deputy Wirthele was legally authorized to ask Martinez further questions about illegal items in the car and to look for a K-9 unit after he had finished issuing the warning ticket. *See United States v. Perez*, 29 F.4th 975, 984 (8th Cir. 2022) ("An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." (quoting *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016))); *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008) ("If an officer's suspicions are aroused in the course of such an investigation, the officer is entitled to expand the scope of the stop to ask questions unrelated to the original traffic offense . . . .". (quoting *United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999))). When Martinez began making incriminating statements, Deputy Wirthele interrupted her to read her *Miranda* rights. Martinez indicated that she understood her *Miranda* rights and admitted that there were drugs in the vehicle.[5] Once she did so, Deputy Wirthele had probable cause to search the vehicle. *See United States v. McCarty*, 612 F.3d 1020, 1026 (8th Cir. 2010) (holding that an admission that there was marijuana in the car provided probable cause to search the car). Defendants' argument that they displayed innocent conduct given the realities of contemporary life is unpersuasive under the totality of the circumstances. The objection to Judge Bazis's reasonable suspicion finding is overruled.

---

[5] Defendants have never argued that Martinez did not validly waive her *Miranda* rights at this point. Filing 54 at 6–7 (only arguing that Martinez was in custody when Deputy Wirthele stated he would call a drug dog and asked if there was anything in the car he should know about, not that her *Miranda* waiver was invalid); Filing 99 at 3–7 (no argument about the validity of the *Miranda* waiver). Therefore, they have waived that issue. *See United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012) (holding arguments related to the suppression of evidence were waived when not made in the pretrial motion to suppress); Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review."). And even if they had not, the Court agrees with Judge Bazis that Martinez waived her *Miranda* rights because she indicated that she understood what they were and continued speaking to Deputy Wirthele.

13

### C. Consensual Encounter

Defendants also argue that the interaction between Deputy Wirthele and Martinez was not a consensual encounter after he asked her to stay in his vehicle while he asked Flores for her consent to search. A decision on this issue is superfluous, as the Court has already concluded that Deputy Wirthele could lawfully extend the stop based on his reasonable suspicion of criminal activity. Nevertheless, the Court will rule on the objection.

Law enforcement officers may extend a traffic stop by asking questions if the person stopped consents to answering them. *See Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019) ("Consensual encounters between law enforcement officers and citizens that do not involve coercion or restraint are not seizures."); *Munoz*, 590 F.3d at 921 (explaining that prolonging a stop is permissible if "the continued encounter is consensual"). "To determine whether a police-citizen encounter is consensual or implicates Fourth Amendment protections, [courts] must 'consider[] the totality of the circumstances' and 'the unique facts of each case.'" *United States v. Lillich*, 6 F.4th 869, 876 (8th Cir. 2021) (second alteration in original) (quoting *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012)). Relevant factors include:

> [O]fficers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*Id.* (quoting *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008)). Ultimately, "The test for whether a person has been 'seized' within the meaning of the Fourth Amendment is an 'objective standard' that looks to whether a reasonable person would have believed that he was not free to leave." *United States v. Grant*, 696 F.3d 780, 784–85 (8th Cir. 2012) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988)).

The Court agrees with Judge Bazis that Martinez consented to answering Deputy Wirthele's questions after he issued the warning ticket. Deputy Wirthele was the only officer on the scene and was not positioned in a way that prevented Martinez from exiting his cruiser. He never touched Martinez or exhibited intimidating behavior. Defendants' argument that the encounter ceased being consensual when Deputy Wirthele asked Martinez to "stay put" while he asked Flores for consent to search is foreclosed by Eighth Circuit caselaw. *See Munoz*, 590 F.3d at 921–22 ("That Trooper Jackson told Munoz to remain in the cruiser while he spoke with Smith—as Munoz suggested—did not turn the consensual encounter back into a seizure."); *United States v. McManus*, 70 F.3d 990, 992–93 (8th Cir. 1995) (holding that the officer's "direction that [the defendant] come back in and have a seat did not transform the encounter into a seizure"). Martinez's consent to answer Deputy Wirthele's questions permitted him to extend the stop. Defendants' objection to Judge Bazis's consensual encounter finding is overruled.

## IV. CONCLUSION

For these reasons, the Court overrules Defendants' objections, adopts Judge Bazis's Findings and Recommendation in its entirety, and denies Defendants' Motions to Suppress. Accordingly,

IT IS ORDERED:

1. Defendants' objections, Filing 101; Filing 98, are overruled;
2. The magistrate judge's Findings and Recommendation, Filing 97, adopted in its entirety;
3. Defendants' Motions to Suppress, Filing 53; Filing 61, are denied; and
4. The Clerk of Court is directed to terminate the Government's responses, Filing 100; Filing 103; Filing 106, as pending motions.

Dated this 29th day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge